MEYERS, J.,
filed a dissenting opinion. In Wilson v. State, 311 S.W.3d 452 (Tex. Crim.App.2010), this Court decided that evidence was obtained in violation of the law and, thus, inadmissible under Code of Criminal Procedure Article 38.23 when an officer used a falsified fingerprint report to evoke the suspect’s confession. Because I did not believe that the officer in that case could have been found guilty of tampering with or fabricating physical evidence under Penal Code Section 37.09, I dissented to the Court’s holding that the confession was inadmissible.[1]
In a case of sexual assault of a child, we held that a used condom was inadmissible because it was taken from the appellant’s truck by his sister, who was the mother of the victim, and we determined that she took the condom with the intent to deprive the appellant of his property. Jenschke v. State, 147 S.W.3d 398 (Tex.Crim.App. 2004). I dissented in that ease too because I disagreed that the used condom was the appellant’s property. In both Wilson and Jenschke, we held that the evidence was inadmissible under Article 38.23.
Now, the majority goes beyond simply deciding whether evidence was obtained in violation of the law and also considers whether the person who gathered the evidence believed or was aware that she committed a forbidden act. The majority goes to great lengths to show that the dog sitter in this case was not guilty of criminal trespass or breach of computer security, even to the point of citing authority, analyzing whether the dog sitter may have believed she had Appellant’s express or apparent assent, and concluding that the dog sitter was unaware that she lacked Appellant’s effective consent.[2]1 do not re *232 member us taking- the analysis to this point in previous cases, but I think that if we had taken this additional step then a lot more evidence would be admitted.
This is a very fact-specific inquiry, and the majority places importance on the fact that Appellant said, “Help yourself to anything” and that his stated purpose for asking her to keep his bedroom door closed was to keep the dog out of the room. This raises a lot of questions for me. Did Appellant need to inform the dog sitter of each and every reason that he wanted to keep his bedroom door closed? Did he also need to expressly inform her that she did not have consent to use his clothing or jewelry? Telling a house guest to “help yourself to anything” is usually not an invitation to go through personal belongings. And, using someone’s computer is not like using the television, stereo, microwave, dishwasher, or refrigerator. It is not just an appliance or entertainment option.[3] Computers contain a great deal of personal information such as photos, diaries, legal documents, tax and financial records, medical records, social security numbers, bank account and credit card numbers, and other personal communications, documents, files, letters, reports, and notes.
The majority also places importance on the fact that Appellant’s computer was not password-protected, but why would he password-protect a computer in his own bedroom? If the dog sitter thought that she had permission to use the computer, then why did she feel the need to clean up what she had done and to delete the music from the recycle bin? It seems to me that she was trying to hide the fact that she had used the computer because she knew that she did not have his consent to use it. If she was unaware that she lacked consent, then why did she consult counsel before contacting the police regarding what she had found on Appellant’s computer?
I understand the trial court, court of appeals, and majority’s reluctance to suppress this evidence, given the quantity and nature of the child pornography found on Appellant’s computer. However, the extreme facts of Appellant’s case should have no bearing on whether the evidence was obtained in violation of the law and should be excluded under Article 38.23. Unfortunately, our temerity has resulted in the creation of an entirely new approach and resolution to these types of suppression hearings. In fact, our ruling has effectively eliminated a violation of the law in procuring evidence from the language of Article 38.23.[4]
Because I disagree with the majority’s determination that the dog sitter did not commit a crime because she believed that she had Appellant’s apparent consent to use his computer, I respectfully dissent. I would conclude that the dog sitter violated the breach of computer-security law and *233 thus, under Article 38.23, the evidence she obtained should not have been used.

. Apparently this case overrules Wilson.

. Judge Keller's concurring opinion basically returns a "no bill” on Dawn Killian after simulating a constructive grand jury inquiry into her culpability.

. At the suppression hearing, the State argued that, “Nowadays in American society, a computer is just about as common as a telephone or a refrigerator. So to say even though I didn’t tell her she could get the computer, what this Court is telling you it is absolutely ludicrous to suggest that I can invite you into my home and somehow you are going to know you can’t get on my computer but you can get in the refrigerator. You can get on my stereo.”

. At the suppression hearing, the District Attorney incorrectly stated multiple times that Appellant had the burden to persuade the court that the witness committed a crime. He also stated that there was no conclusion that the witness violated the law. The judge agreed and denied Appellant's motion without even allowing Appellant's counsel to make his final argument.